UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MINGJI AVE4 REALTY, LLC and STAR UNIVERSE
RENOVATION CORP.,

           *Plaintiffs,*

   -against-

COLONY INSURANCE COMPANY, PELEUS
INSURANCE COMPANY, and TRAVELERS
CASUALTY INSURANCE COMPANY OF AMERICA,

          *Defendants.*
          .

23-CV-7848 (ARR) (PK)

**OPINION & ORDER**

In the present action, plaintiffs MingJi Ave4 Realty, LLC ("MingJi") and Star Universe Renovation Corporation ("Star") seek declaratory judgments that defendants Colony Insurance Company ("Colony"); Peleus Insurance Company ("Peleus"), and Travelers Casualty Insurance Company of America (Travelers), are obligated to defend and indemnify plaintiffs in an underlying personal injury action against plaintiffs. As explained further below, Colony and Peleus each issued an insurance policy to plaintiffs, whereas Travelers issued an insurance policy to plaintiffs' subcontractor, 2M6 Corporation ("2M6").

Defendants now move for summary judgment. For the reasons set forth below, I GRANT Colony's and Peleus's motion as to the claims asserted by Star, but DENY that motion as to the claims asserted by MingJi. Finally, I GRANT Travelers' motion as to both MingJi and Star.

## BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed unless otherwise noted. I construe the facts in the light most favorable plaintiffs as the nonmoving party.

## I.        Relevant Parties

MingJi is the owner of the property located on 7910 4th Ave, Brooklyn, NY 11209 (the "Premises"). On September 10, 2022, MingJi retained Star as a general contractor for a construction project to be performed on the Premises. GC Contract, ECF No. 53-14. On September 22, 2022, Star hired 2M6 Corporation ("2M6") as a subcontractor to perform certain work on the project. 2M6 Const. Contract, ECF No. 53-11.

Colony, Peleus, and 2M6 are all commercial liability insurers who issued policies to one or more of the parties involved in the construction project. The relevant terms of each policy are set forth below.

## II.       Colony & Peleus Policies

Colony issued "Commercial General Liability Policy No. 600 GL 0211146-00" to MingJi and Star, effective during the period from September 13, 2022 to September 13, 2024 (the "Colony Policy"). Colony Policy at 6, ECF No. 52-12. The Colony Policy provided for a coverage limit of $1 million for "Each Occurrence," and, subject to certain limits and exclusions not relevant here, included coverage for "bodily injury." *Id*. at 9–12.

Among other provisions, the Colony Policy contained a "Contractor Warranty," which imposed certain conditions related to the insurance held by "any contractor or subcontractor . . . hired to perform work for [MingJi and Star]." Contractor Warranty, ECF No. 52-13. The Contractor Warranty begins with two "schedules," reproduced below. *Id*.

2

**SCHEDULES**

| SCHEDULE A |
| --- |
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Description of Designated Operation(s):** |
| All work, activities, or operations involving land excavation, building foundation formation, load bearing beam installation, load bearing beam removal, structural steel installation, structural steel removal, elevator shaft work, or work, activities, or operations performed on the exterior of any building or structure. |
| **Specified Location(s):** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each Occurrence Limit: $5,000,000 |
| General Aggregate Limit: $5,000,000 |
| Products/Completed Operations Aggregate Limit: $5,000,000 |

| SCHEDULE B |
| --- |
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each Occurrence Limit: $1,000,000 |
| General Aggregate Limit: $2,000,000 |
| Products/Completed Operations Aggregate Limit: $2,000,000 |

Under the heading "SCHEDULE A above applies," the Contractor Warranty states that Colony would "have no duty to defend or indemnify any insured if . . . the insured fails to satisfy all conditions precedent . . . below with respect to the designated operations described . . . in Schedule A." *Id*. The four conditions were as follows:

a. The "contractor" has signed and executed an agreement with the insured which . . . contains the following provisions:
 (1) An agreement to defend, indemnify, and hold the insured harmless . . . against all losses arising out of the work performed by or on behalf of any such "contractor", . . . and
 (2) A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy . . . .
b. The "contractor" has maintained "adequate insurance";
c. The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and
d. All documents required must be kept on file and made available at our request.

*Id*. at 2.

3

Meanwhile, under the heading "SCHEDULE B above applies," the Contractor Warranty states that Colony would "have no duty to defend or indemnify . . . [if] the insured fails to satisfy all conditions precedent . . . below with respect to all operations . . . not described or specified in SCHEDULE A above." *Id*. The Contractor Warranty then listed four conditions, using identical language to the four conditions used in Schedule A above. *Id*.

Finally, the Contractor Warranty defined "Adequate Insurance" as "Commercial General Liability Insurance, Workers' Compensation and Employer's Liability Insurance . . . which:"

a. Remains in full force and effect without a lapse in coverage from the date on which the agreement for work being performed for the insured . . . is executed until the date on which the work is completed;
b. Provides Commercial General Liability Limits of Insurance for such operations that are equal to or greater than the Limits of Insurance indicated in SCHEDULE A and B above;
c. Provides Workers' Compensation and Employer's Liability Insurance in compliance with the statutes of the applicable state;
d. Includes coverage for "bodily injury" or "property damage" arising out of work performed by the "contractor" or on behalf of the "contractor" per the agreement with the insured;
e. Does not exclude any claim . . . arising out of any "bodily injury" to any "worker" of the "contractor"; and
f. Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors.

*Id*. at 3.

In addition to the Colony Policy, MingJi and Star obtained a "Commercial Excess Liability Policy" from Peleus (the "Peleus Excess Policy"). Peleus Policy, ECF No. 52-14. The Peleus Excess Policy was effective from September 13, 2022 to September 13, 2024. *Id*. at 4. Among other provisions, the Peleus Excess Policy provided that it is subject to the "same provisions, exclusions and limitations that are contained in the applicable underlying insurance." *Id*. at 11.

## III.    2M6 Subcontract and Addenda

4

On September 22, 2022, Star hired 2M6 as a subcontractor to perform certain work on the construction project located at the Premises. 2M6 Const. Contract, ECF No. 53-11. The construction project had largely been completed by another contractor some months earlier and then abandoned, and 2M6 "came in just to tidy up the project to get them to the next phase." Tr. of San Miguel at 19 (2M6's owner, testifying that it was hired for a "finish up" project that was performed by "[s]ome other guys" who "finished 90 percent, 95 percent," and that 2M6's role was to "basically, just clean[] it up, get ready for the next subcontractor to come in"). The subcontract executed between Star and 2M6 provides that:

> [2M6] agrees to perform the construction described below:
> 1. All work should be done based on the DOB approved Foundation, SOE, Excavation and Site Safety plans.
> . . . .
> 3. All Dirt/Soil site Excavation, Dump Trucking.
> 4. All required tools including excavator when required
> 5. All Rebar works including: Supply rebar material . . . forming, pouring, remove forms after pouring.
> 6. All Concrete work including: Ordering cement trucks, pouring schedules, coordinate Concrete Inspectors for the lab testing.
> 7. Supply and Install/Remove concrete wall panels, form/templet/ mouldboard.

*Id*. at 2.

2M6 and Star executed a series of contracts concerning insurance coverage. In the September 22 subcontract, 2M6 agreed "to hold harmless as well as indemnify [Star] against all liabilities, expenses, claims or other." *Id*. at 5. Several days later, on September 28, 2022, the parties executed several addendum agreements, which included the following terms:

- 2M6 agreed to obtain insurance with minimum liability limits of $1 million and "Each Occurrence coverage" of $2 million. 2M6 Addendum, ECF No. 53-15.

- 2M6 agreed to "indemnify, defend and hold harmless" MingJi "against any claims resulting from the performance of [2M6's] work." Hold Harmless Agmt. at 2, ECF No. 53-4.

- 2M6 agreed to name MingJi as an "Additional Insured" on a "General Liability" insurance policy to be issued to 2M6, with limits equal to or higher than $1 million per occurrence and $2 million aggregate coverage. *Id*.

## IV.    Traveler's Policy & COIs

On July 21, 2022, prior to 2M6's contracts with MingJi and Star, Travelers issued a commercial insurance policy to 2M6 for the period from July 22, 2022 to July 22, 2023 (the "Travelers Policy"). ECF No. 48-2 at 2. 2M6 was the only named insured on the Travelers Policy, which provided for a "General Aggregate" coverage limit of $2 million and an "Each Occurrence Limit" of $1 million. *Id*. As I concluded in my prior order, Star and MingJi were also not "additional insureds" under the Travelers Policy. *See* MTD Op. & Order, ECF No. 26.

Notwithstanding 2M6's failure to add Star and Mingji as named or additional insureds under the Travelers Policy, 2M6 procured two "Certificate[s] of Liability Insurance" that purported to add Star (the "Star COI") and Mingji (the "MingJi COI") (collectively, the "COIs") as additional insureds. COIs, ECF No. 48-5. The COIs were issued on "October 28, 2022," and state that the "producer" of each COI was "BNP Coverage, Inc." ("BNP"), and each COI was signed by Mr. Peleg, *id*., who is the founder and owner of BNP, Peleg Decl. at 1–2, ECF No. 49.

In his declaration, Mr. Peleg states that he was a "sub-producer with Insurance Professional Agency ("IPA") . . . , a master agent and wholesaler-aggregator with authority to act as Travelers' agent." *Id*. at 1. The plaintiffs have submitted evidence that Travelers executed a contract appointing IPA as its agent and authorized IPA to issue business insurance policies on its

behalf. IPA Agency Contract, ECF No. 49-7; IPA Agency Contract Amendment, ECF No. 49-8. However, other than Mr. Peleg's statements that he was a "sub-producer of IPA," there is no evidence that Mr. Peleg was authorized to act as a sub-producer for IPA or as an agent for travelers. Peleg Decl. at 1–2. Moreover, plaintiffs do not assert that BNP, Mr. Peleg's company, was a sub-producer for IPA, or had any other relationship with IPA or Travelers prior to the issuance of the COIs. *See* BNP-Travelers Agency Contract, ECF No. 44-3 (first contract authorizing BNP to act as Travelers' agent in issuing insurance, which became effective on November 16, 2022, after the COIs were issued).

## V.     The Underlying Action

On October 26, 2022, Luis Angel Gomez Avilez (the "Underlying Claimant") was allegedly injured in a fall while working on the construction of the Premises. *See Luis Angel Gomez Avilez v. Mingji Ave5 Realty, et al.*, Sup. Ct. of N.Y. Bronx County, No. 816681/2022E. On November 8, 2022, Mr. Avilez filed suit (the "Underlying Action") against Mingji, Star, and others, seeking damages arising from the events surrounding his injury. *Id.*[1] In his deposition, Mr. Avilez testified that he did not know which entity he was working for, but that he was hired by a "foreman" named "Roberto." Avilez Transcript at 18, ECF No. 53-6. Robert San Miguel, 2M6's owner, testified that 2M6 had employed Mr. Avilez for a few days on the construction project. San Miguel Tr. at 40–41, ECF No. 53-8.

Shortly after Mr. Avilez filed the underlying action, Colony and Peleus received their first notice of the suit and sent a claim acknowledgement letter to Plaintiffs. Pl.'s Resp. to Def.'s Rule

---

[1] The underlying complaint also asserts claims against another entity, W-8 Electrical Corporation, which performed work on the Premises at some point prior to 2M6's involvement with the construction project. *See* W-8 Insurance Denial Letter, ECF No. 52-3. The parties have submitted no evidence that Mr. Avilez was employed by W-8, or that W-8 was still involved with the construction project by the time that 2M6 was hired.

56.1 Statement ¶ 5, ECF No. 53-19. Shortly thereafter, Colony and Peleus sent Star and MingJi a letter denying coverage for the underlying action. *Id*. ¶ 6.[2]

## PROCEDURAL HISTORY

MingJi and Star initiated the present suit in New York Supreme Court, Kings County, and defendants removed the suit to this district on October 20, 2023. *See* Notice of Removal, ECF No. 1. Shortly after removal, Plaintiffs amended their complaint, which sought declaratory judgments against Colony, Peleus, and Travelers declaring that each insurer was obligated to cover and defend plaintiffs under their respective insurance policies with respect to the Underlying Action asserted by Mr. Avilez. *See* Second Amended Complaint, ECF No. 10-1.

Travelers was the sole defendant to file a motion to dismiss. *See* MTD Op. & Order. I granted that motion, concluding that plaintiffs were not entitled to coverage under the terms of the Travelers Policy.  Plaintiffs were not "additional insureds" as defined by the Travelers Policy, and the COIs naming them as "additional insureds" did not entitle them to coverage in contradiction of the terms of that policy under New York Law. *Id*. at 4–9. Furthermore, plaintiffs lacked standing to assert 2M6's rights against Travelers under the Travelers Policy's "insured contract" provisions. *Id*. at 9–10. However, I permitted plaintiffs to amend their complaint "on one specific issue," namely, to assert a claim that Travelers is estopped from denying them coverage based on the issuance of the COIs. *Id*. at 10.

Before me now are defendants' motions for summary judgment. Colony and Peleus have filed a joint motion asserting that plaintiffs failed to satisfy the conditions precedent set forth in

---

[2] Although the parties dispute the precise date on which the denial letter was delivered, the parties agree that under either date the coverage denial was timely under New York law. *Id*. ¶ 7I note that the denial letter included a broad reservation of Colony's and Peleus's rights. Colony and Peleus Denial Letter at 10, ECF No. 53-10.

the Contractor Warranty and are therefore not entitled to coverage under the Colony Policy and Peleus Policy. *See* Mot. for S. J. by Colony and Peleus ("C&P Mot."), ECF No. 52-19. Travelers has separately moved for summary judgment as to plaintiffs' claim for coverage by estoppel. See Travelers' Mot. for S.J., ECF No. 48-13.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant nears the burden of showing that there are no genuine disputes of material fact. *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A genuine dispute of material fact exists when there is sufficient evidence for "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In resolving a summary judgment motion, I must "construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). I may not "weigh the evidence" or resolve credibility issues. *Anderson*, 477 U.S. at 249. "[S]ummary judgment should usually be denied" if the "resolution of a dispute turns on the meaning of an ambiguous term or phrase." *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) (quotation marks omitted).

## DISCUSSION

I.    **Colony and Peleus – Breach of the Conditions Precedent to Coverage Set Forth in the Contractor Warranty**

Colony asserts that it is entitled to summary judgment due to plaintiffs' purported breach of several conditions precedent to coverage set forth in the Contractor Warranty, which is part of the Colony Policy. Peleus likewise contends that it is entitled to summary judgment due to plaintiffs' breach of those conditions, as the Peleus Excess Policy provides that it is subject to the "same provisions."

Colony and Peleus primarily rely on two arguments. First, they assert that "Plaintiffs were . . . required to ensure that" 2M6 was subscribed to an insurance policy "that contained limits of insurance in the amount of $5 million per occurrence," C&P Mot. at 1, as 2M6 was performing "designated operations" subject to Schedule A of the Contractor Warranty, *see* Contractor Warranty at 1. Second, they assert that "[t]he Contractor Warranty required 2M6, and its insurer Travelers, to defend and indemnify Plaintiffs and provide Plaintiffs with coverage as Additional Insureds under the Travelers Policy." C&P Mot. at 1–2.

For the reasons set forth below, I DENY summary judgment as to MingJi's claims against Colony and Peleus, but GRANT summary judgment as to Star's claims against Colony and Peleus.

### 1.      Applicable Law

Under New York Law, "an insured's failure to comply with the requirements of a policy endorsement means that the insurer has no duty to defend or indemnify that policyholder. *Peleus Ins. Co. v. Lati Constr. Corp.*, No. 22-CV-7090, 2025 WL 35963, at *4 (E.D.N.Y. Jan. 6, 2025) (quotation marks omitted); *see also Mt. Hawley Ins. Co. v. Nat'l Builders LLC*, No. 08-CV-5526, 2009 WL 1919611, at *3 (S.D.N.Y. June 30, 2009) ("Defendants do not dispute that they failed to comply with at least three of the conditions of [the policy endorsement] . . . any one of these failures is a sufficient basis for [the insurer] to disclaim coverage."). Accordingly, plaintiffs'

failure to satisfy any of the express conditions set forth in the Contractor Warranty would defeat their claims for coverage under the Colony and Peleus policies.

Insurance policies, and the conditions precedent contained within them, are "interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (citations and quotation marks omitted). Policy provisions are given their plain and ordinary meaning, and are ambiguous "where [the] terms are subject to more than on reasonable interpretation," based "on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015).

"If the terms are unambiguous, courts should enforce the contract as written." *Lee v. Union Mut. Fire Ins. Co.*, No. 20-CV-3191, 2022 WL 3370086, at *6 (E.D.N.Y. Aug. 16, 2022) (citations omitted), *aff'd*, No. 22-3142-CV, 2023 WL 7014138 (2d Cir. Oct. 25, 2023). However, where the language of "the contract is ambiguous, . . . the ambiguity is interpreted in favor of the insured." *Wellsville Manor LLC v. Great Am. Ins. Co.*, No. 22-CV-1229, 2024 WL 4362599, at *4 (E.D.N.Y. Oct. 1, 2024) (quotation marks omitted).

## 2. There Remains a Dispute of Material Fact as to Whether 2M6 Was Subject to Schedule A

Schedule A of the Contractor Warranty provides that "[a]ll work, activities, or operations involving . . . building foundation formation" are "Designated Operation(s)" which trigger the conditions precedent in Schedule A. Contractor Warranty at 1. Meanwhile, "all operations . . . not described or specified in Schedule A" are subject to Schedule B. *Id*. at 2. Any "contractor," defined as any "person or entity hired to perform work for the insured or on the insured's behalf," must provide its own insurance with "Liability Limits . . . for such operations that are

11

equal to or greater than the Limits . . . indicated in Schedule A and B." *Id*. at 3. Plaintiffs do not dispute that 2M6's insurance policy with Travelers was limited to $1 million per occurrence, and that if Schedule A indeed applied, defendants would indeed be entitled to summary judgment. However, I agree with plaintiffs that defendants have failed to establish that Schedule A applies to 2M6 in the first instance.

Defendants assert that Schedule A applies because "the work being performed [by 2M6] was related to the building foundation." C&P Mot. at 3. However, their sole evidence in support of that proposition is the deposition testimony of Mr. Avilez, the underlying plaintiff, in which he stated that he was "assigned to '[m]ake the forms and pour concrete.'" C&P Mot. at 12–13 (quoting Avilez Tr. at 23). Standing alone, however, that evidence does not demonstrate that 2M6 performed work "involving" building foundation formation. Contractor Warranty at 1. Although building foundation formation involves forms and concrete, forms and concrete are also used for any number of other construction purposes. Thus, Mr. Avilez's testimony does not demonstrate that 2M6 was involved in any building foundation formation.

In fact, Mr. Avilez's testimony strongly suggests the opposite conclusion. During the time that he was employed at the jobsite, the foreman did not "mention anything about performing excavation . . . [or] foundation work," and the entirety of his work involved the removal of forms[3] from concrete that had already been poured and dried. *Id*. at 21. Moreover, at the time of his injury, Mr. Avilez was removing concrete forms while atop a ladder located "*on the foundation*, on the base, on the first floor." *Id*. at 38 (emphasis added); *see also id* at 33, 45. Mr. Avilez would not have been removing forms from concrete structures atop the foundation if he

---

[3] A "form" is a structure used to hold concrete in shape as it dries.

was performing foundation work. Accordingly, Mr. Avilez's testimony provides no indication that he performed "foundation" work.

Finally, there is evidence raising a disputed question of fact as to whether 2M6's work involved foundation formation. Star's owner, 2M6's owner, and MingJi's managing member all testified that 2M6's work on the project was limited to "project maintenance and light construction work, such as clean-up of the project site . . . and taking down the forms that were used to support the basement wall." San Miguel Tr. at 20, 22–24 (2M6's owner, testifying that 2M6 did not perform "any concrete work for the foundation" and did not perform "any soil excavation or site excavation"); *see also* Transcript of Star Universe at 29, ECF No. 53-7 (Star's owner, testifying that 2M6 was not "doing anything involving land excavation" or "building the foundation formation").

In response to that evidence, defendants contend in their reply brief that 2M6's contract with Star "controls for coverage purposes" and clearly establishes that 2M6 performed "building foundation work." C&P Mot. at 9. Even if defendants had not waived that argument by raising it for the first time in their reply brief, *see Rothman v. Complete Packing & Shipping Supplies, Inc.*, No. 22-CV-2821, 2024 WL 4350433, at *4 (E.D.N.Y. Sept. 30, 2024), defendants have failed to establish either prong of that argument.

First, the Contractor Warranty does not unambiguously establish that 2M6's construction contract "controls for coverage purposes." C&P Mot. at 9. Instead, the Contractor Warranty merely provides that, "prior to the commencement of any work," the insured must "satisfy all conditions precedent . . . *with respect to the designated operations* specified in Schedule A." Contractor Warranty at 1 (emphasis added). As relevant here, MingJi warranted that 2M6 maintained insurance that "[p]rovides . . . Liability Limits of Insurance *for such operations* that

are equal to or greater than the Limits of Insurance indicated in SCHEDULE A and B."
Contractor Warranty at 1, 3 (emphasis added). The above language does not clearly indicate how
the parties to the Colony Policy would determine whether the work was a designated operation.

Second, even if 2M6's construction contract with Star "controls for coverage purposes,"
it is far from clear that the contract provided for "building foundation work." C&P Mot. at 9. As
stated in that contract, 2M6 agreed to perform "[a]ll Rebar works," "[a]ll Concrete Works," "[a]ll
. . . site Excavation," and to "Supply and Install/Remove concrete wall panels, form/templet/
mouldboard." Star 2M6 Contract at 2, ECF No. 53-1. None of those job descriptions clearly
indicate that 2M6 agreed to perform work involving building foundation formation. Again,
concrete and rebar are used for any number of construction purposes other than a building's
foundation. Furthermore, the construction contract's vague description that 2M6 would perform
"[a]ll" of the enumerated types of work is ambiguous. Although that language clearly required
2M6 to perform "[a]ll . . . site Excavation, . . . Rebar works[,] . . . [and] Concrete Work," the
contract does not identify any such work to be performed. Thus, in order to determine what work
formed the "all," I must examine extrinsic evidence as to what work was available at the jobsite.[4]
*See Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 396 (2d Cir. 2023) ("An agreement can
appear to be complete and clear and unambiguous on its face, but its apparently clear language
may nonetheless conceal a latent ambiguity that becomes apparent when one seeks to apply its
terms to the facts. If so, it becomes necessary to consider extrinsic evidence to understand the
meaning of the contract."). As discussed above, 2M6 contracted with Star to work on a
construction project that had already been largely completed, and plaintiffs have ample evidence

---

[4] For example, the meaning of a contract to insure "all" buildings on a parcel of land can only be
determined by reference to what buildings (if any) exist on that parcel.

that there was no remaining excavation or building foundation work available. *See e.g.*, Transcript of San Miguel at 22 (2M6's owner, testifying that 2M6 did not perform "any soil excavation or site excavation," as "[t]hat was all done prior to us getting there"). Meanwhile, defendants have presented no evidence that such work remained at the jobsite.

Accordingly, I cannot conclude that defendants are entitled to summary judgement based on plaintiffs' breach of the insurance limits imposed by Schedule A of the Contractor Warranty. Although it is undisputed that 2M6 failed to procure insurance that met Schedule A's "Each Occurrence Limit" of $5 million, there remains a dispute of fact as to whether 2M6's work involved "Designated Operation(s)" such that 2M6's insurance policy was subject to Schedule A in the first instance. Contractor Warranty at 1.

### 3. The Contractor Warranty Does NOT Require 2M6's Insurer to Tender a Defense and Indemnity to Plaintiffs in the Underlying Action.

Defendants further assert that the Contractor Warranty required plaintiffs to "ensure that 2M6 would defend and indemni[f]y them in the Underlying Action" and "to ensure that 2M6 would provide Additional Insured coverage to Plaintiffs in the Underlying Action," and that Traveler's[5] denial of coverage to plaintiffs breached those conditions. C&P Mot. at 13. However, defendants misread their own contract.

The Contractor Warranty imposes four conditions precedent—none of which require plaintiffs to have received defense and indemnification coverage from Travelers. First, plaintiffs warranted that "[t]he 'contractor' [2M6] has signed and executed an agreement with the insured [Mingji and Star] which . . . contains the following provisions: (1) an agreement to defend, indemnify, and hold the insured harmless . . . against all losses arising out of the work performed

---

[5] As explained above, 2M6's insurer during the relevant period was Travelers.

by . . . any such contractor; and (2) a requirement for the 'contractor' to name the insured as an Additional Insured under their [own insurance] policy." Contractor Warranty at 2. That language requires plaintiffs to have *executed an agreement* with 2M6 to indemnify plaintiffs and to add them as additional insureds under 2M6's insurance policy. Notably, however, the first condition does not require 2M6 to have *fulfilled* that agreement. *C.f. Mt. Hawley Ins. Co. v. Liberato*, No. 07-CV-4368, 2010 WL 2653326, at *4 (E.D.N.Y. June 25, 2010) (granting summary judgement where insured was not named as an additional insured on contractor's insurance, where policy contained condition precedent wherein the "[i]nsured warrants that it has confirmed or will confirm that it is named as an additional insured on all subcontractors general liability policies"). Thus, 2M6's subsequent failure to name plaintiffs as additional insured under the Travelers Policy, and Traveler's subsequent denial of coverage to plaintiffs, does not breach the first condition.

MingJi fully performed the first condition precedent in the Contractor Warranty, as it executed an agreement with 2M6 that contained requisite provisions. *See* Indemnification Hold Harmless Agreement at 2, ECF No. 53-4 (contract between 2M6 and MingJi in which 2M6 agreed to indemnify, defend and hold harmless MingJi, and to add MingJi as an additional insured under 2M6's insurance policy). I therefore DENY summary judgment to defendants based on MingJi's breach of the Contractor Warranty's first condition precedent.

By contrast, plaintiffs have proffered no evidence that Star satisfied the first condition, as none of the agreements entered between 2M6 and Star required 2M6 to add Star as an additional insured to 2M6's insurance. The "Hold Harmless/Indemnification/ Additional Insured Agreement[s]" were entered between 2M6 and MingJi and between Star and MingJi, but there is no such agreement between *2M6 and Star*. *Id.* at 1–3. Likewise, both the construction contract

16

and its addendum, entered between 2M6 and Star, fail to contain a provision requiring 2M6 to name Star as an additional insured. 2M6 Construction Contract and Addendum, ECF No. 48-3. In light of that evidence, there is no dispute of material fact that Star failed to "sign[] and execute an agreement[]" with 2M6 requiring it "to name the insured as an Additional Insured under [its own insurance] policy." Contractor Warranty at 2. "[A] failure to comply with a condition precedent . . . vitiates the contract." *Great Canal Realty Corp. v. Seneca Ins. Co.*, 5 N.Y.3d 742, 743 (2005). Accordingly, I GRANT summary judgment to Colony and Peleus as to Star's claims for coverage under the Travelers and Peleus Policies.

Second, plaintiffs warranted that "[t]he 'contractor' [2M6] has maintained 'adequate insurance.'" Contractor Warranty at 2. Although Colony and Peleus assert that the Contractor Warranty's definition of "adequate insurance" requires plaintiffs to have received coverage and been named as "[a]dditional [i]nsureds on the Travelers Policy," that definition does not unambiguously demand such a result. Rep. at 11. Instead, the definition requires the contractor's insurance policy to "[r]emain in full force and effect" until the work is completed, to meet the "Limits of Insurance indicated in SCHEDULE A and B," and to "[i]nclude[] coverage for 'bodily injury' . . . arising out of work performed by the 'contractor' . . . per the agreement with the insured" without excluding any "claim . . . arising out of any 'bodily injury' to any 'worker' of the 'contractor.'" Contractor Warranty at 3. Despite extensive language describing *what* coverage the contractor's policy must provide, the definition does not describe *who* must be provided be that coverage. *Id*. As a result, the definition conspicuously does not contain any language requiring the contractor's insurer (Travelers, via 2M6) to provide coverage to the Colony Policy's "insureds" (plaintiffs). Nor does the condition precedent contain such language, as

17

would be the case had it stated: "[t]he 'contractor' has maintained 'adequate insurance' [on behalf of the insureds]." *Id.*

"As with the interpretation of any contract, the unambiguous terms of an insurance policy must be accorded their plain and ordinary meaning." *Seaport Park Condo. v. Greater N.Y. Mut. Ins. Co.*, 828 N.Y.S.2d 381, 383 (2007) (citations omitted). Absent further language indicating that "adequate insurance" imposes requirements on the coverage to be provided *to MingJi and Star*, the "adequate insurance" condition unambiguously does not require such coverage. *See 10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co*., 634 F.3d 112, 125 (2d Cir. 2011) (noting that, under New York Law, "[c]ourts may not by construction add or excise terms . . . under the guise of interpreting the writing" (internal quotation marks omitted)) That is especially true given that implying such language into the "adequate insurance" condition would render the prior condition superfluous. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous."). If the "adequate insurance" condition required plaintiffs to be named as additional insureds under 2M6's insurance policy, then there is no justification for the existence of the first condition, which requires plaintiffs to have "executed an agreement" with 2M6 to accomplish that result. Contractor Warranty at 2. Instead, the "adequate insurance" condition imposes requirements as to the insurance *held by the "contractor"* (2M6), and the prior condition requires the contractor to promise to add MingJi and Star to that insurance. In short, the second condition requires only that the "'contractor has maintained 'adequate insurance'" for itself. Contractor Warranty at 2.[6]

---

[6] I note that plaintiffs would prevail even if the "adequate insurance" condition were ambiguous as to whether plaintiffs must receive coverage under their contractor's insurance policy. "When dealing with insurance policies, it is a fundamental principle of New York law that ambiguities

Although the Colony and Peleus cite dozens of cases in their brief, those cases stand for the uncontroversial proposition that the insured must comply with all conditions precedent to receive coverage. *See* C&P Mot. at 11–13, 15. None of the cited cases address what is required by the conditions at issue here. Although my own research has revealed cases interpreting similar, and in some cases, identical language in insurance contracts, none of those cases have concluded that the contractor's maintenance of "adequate insurance" requires anything more than that the contractor have adequate coverage for itself. For example, *in Admiral Ins. Co. v. Builders Choice of N.Y., Inc.*, the court considered a set of conditions precedent requiring "adequate insurance" that used near-identical language to the conditions set forth in the Colony's Contractor Warranty here. No. 21-CV-2460, 2024 WL 4169549, at *2 (S.D.N.Y. Sept. 12, 2024). The condition "required any contractor hired by Builder's Choice [the insured] to have 'adequate insurance," and the court noted that that condition was not met because "Evanston [the contractor's insurer] disclaimed coverage to *Exterior Pro* [the contractor performing work for the insured]." *Id*. at 6 (emphasis added).[7]

Colony and Peleus do not dispute—or at least have not submitted any evidence—that Travelers has denied coverage to 2M6. Nor do they contend that the coverage received by 2M6 fails to meet the requirements for "adequate insurance" set forth in Schedule B. Accordingly, I cannot conclude that the Colony and Peleus are entitled to summary judgement against MingJi

---

should be interpreted against the insurer and in favor of the insured." *Ezrasons, Inc.*, 89 F.4th at 396 (quotation marks omitted).

[7] *See also Peleus Ins. Co. v. Milestone Constr. Corp.*, No. 22-CV-10933, 2024 WL 124630, at *3 (S.D.N.Y. Jan. 11, 2024) (noting that insured was unlikely to prevail on claim that contractor had "adequate insurance," where it was undisputed that contractor's insurance did not provide sufficient coverage to the contractor).

based on the second condition precedent, which requires 2M6 to "ha[ve] maintained 'adequate insurance.'" Contractor Warranty at 2.

Finally, Colony and Peleus do not dispute that plaintiffs fulfilled the remaining two conditions. Any argument based on a breach of those conditions is therefore waived. *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived.").

### 4.    Conclusion

In conclusion, Colony and Peleus have failed to demonstrate that they are entitled to summary judgment due to MingJi's purported breach of the conditions precedent set forth in the Contractor Warranty. It remains disputed whether 2M6's work included "designated operations" that trigger the coverage limits set forth by Schedule A, and therefore 2M6's failure to procure insurance that met or exceeded the Schedule A limits is not dispositive. Moreover, the Contractor Warranty does not require MingJi to have been named as an "additional insured" under 2M6's insurance policy with Travelers, nor does it require MingJi to have received coverage under the Travelers Policy. Accordingly, Travelers denial of coverage to MingJi did not breach any condition precedent.[8] I therefore DENY Colony's and Peleus's motion in part as to the claims asserted by MingJi.

---

[8] I note that, in their initial motion, Colony and Peleus make scattered references to another contractor that performed work on the Premises, W8 Electric Corp., which apparently did not execute any written agreement with Star or MingJi. However, Colony and Peleus have failed to demonstrate that W8's actions bear any relevance to the Colony Policy or Peleus Excess Policy. Colony and Peleus's briefs do not explain why W8 was subject to the Contractor Warranty, nor have they submitted any evidence in support of that proposition. Indeed, as far as the submissions before me reveal, W8's involvement with the premises ceased on March 4, 2022, several months before the effective date of the Colony and Peleus policies. W8 Electric Letter, ECF No. 53-17.

However, Colony and Peleus are entitled to summary judgment against Star, which failed to execute an agreement requiring its subcontractor, 2M6, to add Star as an additional insured under 2M6's insurance policy. I therefore GRANT Colony's and Peleus's motion in part as to the claims asserted by Star.

## II.    The Peleus Policy Is an Excess Insurance Policy, and Peleus Is Therefore Entitled to Dismissal of Plaintiffs' Claims for Defense Coverage

Peleus further contends that plaintiffs are not entitled to defense coverage under the Peleus Excess Policy. "Where its policy has been triggered, a primary insurer has a primary duty to defend its insureds, whereas an excess insurer has no obligation to do so." *AVR-Powell C Dev. Corp. v. Am. States Ins. Co.*, 210 A.D.3d 403, 404, 176 N.Y.S.3d 638, 639 (1st Dep't 2022). "Coverage under an excess policy thus is triggered when the liability limits of the underlying primary insurance policy have been exhausted." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013).

Here, both Colony and Peleus have denied coverage to plaintiffs and refused to defend them in the underlying suit. As a result, the "underlying primary insurance policy"—the Colony Policy— has not been "exhausted," *id*., and plaintiffs' claim for defense fees from Peleus is premature. I therefore dismiss that claim without prejudice. *See Gibraltar Home Improvements, Inc. v. Rockingham Ins. Co.*, No. 22-CV-1805, 2024 WL 4287227, at *12 (E.D.N.Y. Sept. 25, 2024) (dismissing plaintiff's claim for defense coverage from excess insurer as "premature," given that "the record [wa]s devoid of evidence indicating whether . . . [the primary insurer's] policy limit ha[d] been reached").

## III.    The COIs Do Not Estop Travelers from Denying Coverage to Plaintiffs.

As discussed above, Travelers issued the Travelers Policy to 2M6, which performed work on behalf of MingJi and Star as their subcontractor. Although MingJi and Star concede that they

are not entitled to coverage under the text of the Travelers Policy, they claim that Travelers is estopped from denying them defense and indemnification coverage under the Travelers Policy due to the issuance of the COIs, which purported to name plaintiffs as additional insureds under that policy.[9]

Under New York law, "[a] certificate of insurance is merely evidence of a contract for insurance, not conclusive proof that the contract exists, and not, in and of itself, a contract to insure." *Horn Maint. Corp. v. Aetna Cas. & Sur. Co.*, 225 A.D.2d 443, 444 (1st Dep't 1996). However, the New York Appellate Courts are divided on whether "a certificate of insurance can estop an insurance provider from denying coverage." *10 Ellicott Square Ct. Corp.*, 634 F.3d at 122–23 (collecting cases). The Third and Fourth Departments have found that a certificate of insurance estops the insurer from denying coverage, even where that certificate expressly disclaims that it provides coverage, "if the certificate was issued by an agent within the scope of its authority, and . . . the party seeking coverage reasonably relied on the certificate." *Id*. at 122; *see also Sevenson Env't Servs., Inc. v. Sirius Am. Ins. Co*., 74 A.D.3d 1751, 1753 (4th Dep't 2010) (holding that "an insurance company that issues a certificate of insurance naming a particular party as an additional insured may be estopped from denying coverage to that party"). By contrast, the First and Second Departments have "been reluctant to find estoppel based on a certificate of insurance." *10 Ellicott Square Ct. Corp.*, 634 F.3d at 122. [10]

---

[9] In my prior opinion granting Travelers' motion to dismiss, I concluded that plaintiffs were not "additional insureds" under the Travelers Policy, and therefore were not entitled to coverage under that policy. MTD Op. & Order at 10. However, I granted plaintiffs leave to amend their complaint to assert a claim that Travelers was estopped from denying coverage to them due to the issuance of COIs which purported to name plaintiffs as additional insureds under the Travelers Policy. *Id*.

[10] The New York Court of Appeals has yet to resolve the dispute among New York's intermediate courts. *Id*. at 124 & n.1 (noting that the Second Circuit had decided to certify the question, but

I agree with Travelers that there is no "basis to estop defendant from denying the existence of coverage," as "the record is bereft of any evidence from which a rational trier of fact could reasonably find that" the certificates were issued by Travelers' agent. *Lopez v. Rutgers Cas. Ins. Co.*, 298 F. Supp. 3d 503, 515 (E.D.N.Y. 2018). I therefore GRANT summary judgment to Travelers on the claims asserted against it.

To defeat summary judgment, plaintiffs must provide sufficient "evidence from which a rational trier of fact could reasonably find that [the COI issuer] . . . had the actual or apparent authority to bind [the insurer]." *Lopez v. Rutgers Cas. Ins. Co.*, 298 F. Supp. 3d 503, 514–17 (E.D.N.Y. 2018). Under New York law, an insurance broker is typically an agent of the party "seeking insurance, not the insurer." *Id.*; *see also Federal Ins. Co. v. Keybank Nat'l Ass'n*, 340 F. App'x. 5, 7 (2d Cir. 2009) ("It is a long-standing principle of New York law that an insurance broker is ordinarily the agent of the insured, not the insurer."). Thus, a broker will only be "held to have acted as the insurer's agent where there is some evidence of action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred." *Fidelity & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 140 (2d Cir. 2008) (quotation marks omitted).

The Star and Mingji COIs state that the "producer" of each COI was "BNP Coverage, Inc." COIs at 2–3. Travelers asserts, and plaintiffs do not dispute, that BNP was not an agent of Travelers when the COIs were issued on October 28, 2022, as BNP's first agency contract with Travelers became effective on November 16, 2022. *See* BNP-Travelers Agency Contract, ECF No. 44-3. I therefore agree with Travelers that there is no "basis to estop defendant from denying

---

that the parties had settled the underlying litigation before the New York Court of Appeals could act upon the certification).

the existence of coverage," as "the record is bereft of any evidence from which a rational trier of fact could reasonably find that" the certificates were issued by Travelers' agent. *Lopez v. Rutgers Cas. Ins. Co.*, 298 F. Supp. 3d 503, 515 (E.D.N.Y. 2018).

In response to that undisputed evidence, plaintiffs contend that the COIs were issued by Ben Peleg, the owner of BNP. As the evidence demonstrates, IPA indisputably had express authority to issue business insurance policies on behalf of Travelers, as Travelers had executed a contract authorizing IPA "to act as [its] agent." IPA Agency Contract, ECF No. 49-7; IPA Agency Contract Amendment, ECF No. 49-8. According to plaintiffs, Mr. Peleg was a sub-producer for IPA, *i.e.* an agent of an agent of Travelers, and therefore Mr. Peleg had authority to bind Travelers when issuing COIs. Pl. Opp. to Trav. S.J. Mot. at 5, ECF No. 49-12. However, plaintiffs do not assert that BNP, Mr. Peleg's company, was a sub-producer for IPA, or had any other relationship with IPA or Travelers prior to the issuance of the COIs. *See* BNP-Travelers Agency Contract, ECF No. 44-3.

That contention is meritless. First, the COI's clearly state that the "producer" of the COIs was "BNP COVERAGE INC," not Mr. Peleg. COIs at 2–3. Moreover, although Mr. Peleg's declaration asserts that the COIs were issued "under IPA authority as the Master Agent for Travelers," Peleg Decl. at 2, the COIs do not contain a single mention of IPA. The fact that Mr. Peleg's signature appears on the documents does not alter the clear statement that the COIs were issued by BNP, as Mr. Peleg was the sole owner of BNP. Peleg Decl. at 1.

Even assuming that Mr. Peleg issued the certificates, there is no evidence that he had any authority to act as an agent of IPA other than the conclusory statements in his declaration. Mr. Peleg merely states that he "h[as] been a sub-producer with [IPA]" and that he "had authority to issue Travelers policies as a sub-producer of IPA." *Id*. at 1–2. Such statements regarding his

24

relationship with IPA, unsupported by any details or supporting documentary evidence that such a relationship existed, are plainly insufficient. *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (explaining that nonmoving parties cannot defeat summary judgment by "rely[ing] on conclusory allegations or unsubstantiated speculation") (quotation marks and citation omitted); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").[11] Moreover, Mr. Peleg's declaration does not indicate that there was any "action on the insurer's part" or "facts from which a general authority to represent the insurer may be inferred." *Jasam Realty Corp.*, 540 F.3d at 140 (quotation marks omitted). Mr. Peleg does not attest that Travelers ever appointed him to be its agent, entered into any agreement with him before the COIs were issued, or was even aware of his existence. Likewise, his declaration, as well as the other evidence submitted by both parties, contains no indication that Travelers authorized IPA to appoint "sub-producers" generally or to appoint Mr. Peleg specifically.

## CONCLUSION

In conclusion, Colony and Peleus have failed to demonstrate that they are entitled to summary judgment due to MingJi's purported breach of the conditions precedent set forth in the

---

[11] Plaintiffs' sole documentary evidence is two emails exchanged between plaintiffs' counsel and Mr. Peleg, in which Mr. Peleg states that he was "an appointed sub-producer under 'Insurance Professional Agency' which acts as a Wholesaler/Aggregator" and "became appointed as a Sub-Producer on 05/03/2021" until he "stopped working with" IPA on "12/20/2023." Ben Peleg Email October 28, 2024, ECF No. 49-10; Ben Peleg Email October 22, 2024, ECF No. 49-11. Such unsworn statements are inadmissible hearsay and are an insufficient basis for opposing summary judgment. *United States v. All Right, Title & Interest in Real Prop. & Appurtenances,* 77 F.3d 648, 657–58 (2d Cir. 1996) ("[T]he submission of [an] unsworn letter was an inappropriate response to the . . . motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court.").

Contractor Warranty. It remains disputed whether 2M6's work included "designated operations" that trigger the coverage limits set forth by Schedule A, and therefore 2M6's failure to procure insurance that met or exceeded the Schedule A limits is not dispositive. Moreover, the Contractor Warranty does not require MingJi to have been named as an "additional insured" under 2M6's insurance policy with Travelers, nor does it require MingJi to have received coverage under the Travelers Policy. Accordingly, Travelers denial of coverage to MingJi did not breach any condition precedent.[12] I therefore DENY Colony's and Peleus's motion in part as to the claims asserted by MingJi.

However, Colony and Peleus are entitled to summary judgment against Star, which failed to execute an agreement requiring its subcontractor, 2M6, to add Star as an additional insured under 2M6's insurance policy. I therefore GRANT Colony's and Peleus's motion in part as to the claims asserted by Star.

Finally, for the reasons set forth above, plaintiffs have failed to raise a disputed issue of material fact regarding their estoppel claim asserted against Travelers. I therefore GRANT summary judgment to Travelers against plaintiffs.


                                        /s/
                                        Allyne R. Ross
                                        United States District Judge


---

[12] I note that, in their initial motion, Colony and Peleus make scattered references to another contractor that performed work on the Premises, W8 Electric Corp., which apparently did not execute any written agreement with Star or MingJi. However, Colony and Peleus have failed to demonstrate that W8's actions bear any relevance to the Colony Policy or Peleus Excess Policy. Colony and Peleus's briefs do not explain why W8 was subject to the Contractor Warranty, nor have they submitted any evidence in support of that proposition. Indeed, as far as the submissions before me reveal, W8's involvement with the premises ceased on March 4, 2022, several months before the effective date of the Colony and Peleus policies. W8 Electric Letter, ECF No. 53-17.

Dated:          March 13, 2025
                     Brooklyn, New York